# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ISRAEL RUIZ, ) | |
| ) | |
| Plaintiff, ) | Case No. 14-cv-02750 |
| ) | |
| v. ) | Judge Robert M. Dow, Jr. |
| ) | |
| L. WILLIAMS, DR. SHAFFER, DR. ) | |
| PARTHASARATHI GHOSH, DR. ) | |
| CARTER, C.O. WHITFIELD, WARDEN ) | |
| MARCUS HARDY, DR. OJELADE, ) | |
| WARDEN M. REED, DR. ANDREW ) | |
| TILDEN, DR. NWAOBASI, DR. ) | |
| SHEARING, DR. FUENTEZ, NURSE ) | |
| EGGEMEYER, WARDEN RICHARD ) | |
| HARRINGTON, WARDEN RANDY ) | |
| PFISTER, DR. LOUIS SHICKER, and ) | |
| WEXFORD HEALTH SOURCES, INC. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the motion [75] of Defendants Eggemeyer, Hardy, Harrington, Pfister,[1] Reed, and Shicker ("Defendants") to dismiss Plaintiff's amended complaint [11] or, in the alternative, to sever the claims involving the Pontiac Correctional Center and the Menard Correctional Center. For the reasons set forth below, the Court denies Defendants' motion. The Court also grants Defendant Whitfield leave to file an answer or a motion to dismiss by December 14, 2015.

---

[1] Plaintiff's complaint names "Randy Ptist" as a defendant. Defendants' motion indicates that this was a misnomer and that the correct name of this defendant is "Randy Pfister." The Court has modified the case caption accordingly. The Clerk of the Court is also directed to modify defendant's name to "Randy Pfister."

## I. Background[2]

On April 14, 2011, Plaintiff filed a *pro se* complaint [1] against seventeen medical and non-medical officials who work at the Stateville, Pontiac, and Menard Correctional Centers, where Plaintiff has been incarcerated. The complaint was handwritten in narrative form and did not contain separate counts. It alleged, in essence, that the defendants violated his rights under the First, Fifth, Eighth, Ninth, and Fourteenth Amendments to the U.S. Constitution by showing deliberate indifference and reckless and callous disregard for his requests for medical treatment following a "gastric eruption" in his lower right abdomen in February 2010.

When he filed his original complaint, Plaintiff also filed a motion for leave to proceed *in forma pauperis* [3] and a motion for attorney representation [4]. The Court granted both of Plaintiff's motions. See [6], [7]. In addition, the Court dismissed Plaintiff's original complaint without prejudice and ordered Plaintiff's recruited counsel to file an amended complaint to address two issues. [6] at 3. First, the Court determined that the original complaint did not comply with federal rules concerning joinder, because it alleged "distinct claims against unrelated Defendants." *Id.* at 2. The Court stated that "Plaintiff may sue only Stateville officials under this case number," and must file a separate action against the Pontiac officials in the U.S. District Court for the Central District of Illinois, and another separate action against the Menard officials in the Southern District of Illinois. *Id.* (citing *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)). Second, the Court recommended that counsel "ensure that any claim against Stateville Defendants is timely" under the applicable two-year statute of limitations. *Id.* (citing *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008); 735 ILCS 5/13-202).

---

[2] For purposes of Defendants' motion to dismiss, the Court assumes as true all well-plead allegations set forth in the amended complaint. See *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Plaintiff, through his recruited attorneys, filed an amended complaint [11]. The amended complaint adds as a defendant Wexford Health Sources, Inc. ("Wexford"), which provides medical care and treatment to inmates at the Stateville, Pontiac, and Menard Correctional Centers. The amended complaint contains a background section, divided into three parts, that outlines the deliberate indifference that Plaintiff allegedly endured at the Stateville, Pontiac, and Menard Correctional Centers. All of the events detailed occurred between February 2010—when Plaintiff felt the "gastric eruption" in his lower right abdomen—and January 2014—when he was diagnosed with irritable bowel syndrome ("IBS") and prescribed medication to help treat his condition and control his pain. The amended complaint contains three counts. Count I is brought against all Defendants except Wexford and alleges a claim under 42 U.S.C. § 1983 for cruel and unusual punishment and deliberate indifference to serious medical needs. Count II is brought only against Wexford and alleges that Wexford's policies and procedures resulted in the consistent failure and refusal of its employees to provide adequate medical care to Plaintiff. Count III is brought against all Defendants and alleges that Defendants have violated Plaintiff's First Amendment rights by retaliating against him for pursuing prior lawsuits and grievances at the Stateville, Pontiac, and Menard correctional centers.

## II.     Motion to Dismiss Claims Against Defendants Whitfield and Hardy On Statute of Limitations Grounds

Defendants have moved to dismiss Plaintiff's claims against Defendant Whitfield and Defendant Hardy on the basis that such claims are barred by the two-year statute of limitations that applies to Section 1983 actions in Illinois. See *Kalimara v. Illinois Dep't of Corr.*, 879 F.2d 276, 276-77 (7th Cir. 1989) (holding that Illinois' two-year statute of limitations, which applies generally to actions for damages for injury to the person, as well as to several listed intentional

torts, applies to § 1983 actions brought in Illinois). The Court considers each Defendant separately.

### A. Defendant Whitfield

The motion at issue here [75] was brought by Defendants Eggemayer, Hardy, Pfister, Reed and Shicker. [75] at 1, 8; see *also* [81] at 1, 7. These Defendants do not have standing to move for the dismissal of claims against Defendant Whitfield. Therefore, the motion [75] is denied as to Defendant Whitfield. The Court presumes that Defendants may have mistakenly omitted Defendant Whitfield from the motion's title, introductory paragraph, and prayer for relief. Therefore the Court grants Defendant Whitfield leave to file a motion to dismiss or an answer by no later than November 25, 2015.

### B. Defendant Hardy

#### 1. Factual Background

The following allegations in the amended complaint are relevant to resolving Hardy's statute of limitations argument. At all times relevant to the amended complaint, Hardy was warden at the Stateville Correctional Center. [11] at 6. On February 24, 2010, while residing in the Stateville Correctional Center, Plaintiff felt a gastric eruption in his lower right abdomen and groin area. *Id.* at 4. Plaintiff saw medical staff and was prescribed laxatives, but this did not address his condition and his pain continued to worsen. *See id.* at 5. On August 3, 2010, Plaintiff submitted an emergency grievance complaining that he was suffering from pain, gas and other issues that medical staff had failed to address. *Id.* On August 11, 2010, Defendant Hardy deemed Plaintiff's August 3, 2010 grievance an emergency. *Id.* at 6. However, Hardy never followed up on the issue and no one else addressed it. *Id.* at 6. Hardy subsequently received (on unspecified dates) at least four more grievances from Plaintiff seeking help for the same medical

4

problems, but did not respond. *Id.* Plaintiff also sent (on unspecified dates) letters to Hardy concerning his medical condition, severe pain, and need for help, but Hardy did not respond to the letters, either. *Id.* On December 30, 2011, Plaintiff was examined by Defendant Dr. Carter in the Health Care Unit. Dr. Carter gave Ruiz laxatives, but they did not help with Plaintiff's extreme abdominal pain, lower back pain, or bleeding rectum. *Id.* at 8. Plaintiff complained to Defendant Dr. Shicker and Defendant Williams that he was not receiving adequate treatment for his severe abdominal pain and gastrointestinal issues, but they did nothing. See *id.* at 8-9. At some point between July 11, 2012 and August 29, 2012, Plaintiff was transferred from Stateville to the Pontiac Correctional Center. *Id.* at 9. Plaintiff was transferred again, from Pontiac to the Menard Correctional Center, at some point between January 10, 2013 and April 20, 2013. See *id.* at 11-12. On January 8, 2014, Plaintiff saw Dr. Trost, who diagnosed him with IBS and prescribed medication to address his condition. *Id.* at 14. Since then, Plaintiff has taken the medication that Dr. Trost prescribed and it has addressed his symptoms and helped control his pain. *Id.*

### 2. Legal Standards

Rule 8(a) requires a plaintiff's complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of

the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011).

Typically, a statute of limitations issue cannot be decided on a motion to dismiss, because the statute of limitations is an affirmative defense that the plaintiff is not required to address in the complaint. *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004). "Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Jovic v. L-3 Servs., Inc.*, 69 F. Supp. 3d 750, 765 (N.D. Ill. 2014) (quoting *Xechem, Inc. v. Bristol–Myers Squibb Co.,* 372 F.3d 899, 901 (7th Cir. 2004)) (internal quotation marks omitted). See *also, e.g.*, *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) (a "district court may dismiss under Rule 12(b)(6) something that is indisputably time-barred").

### 3. Analysis

The parties agree that a two-year statute of limitations applies to Plaintiff's Section 1983 claims. See *Kalimara*, 879 F.2d at 277. However, the parties disagree about when Plaintiff's cause of action against Hardy accrued for purposes of calculating the statute of limitations. Hardy takes the position that Plaintiff's claims against him accrued, at the latest, on December 30, 2011, when Dr. Carter treated Plaintiff. According to the Hardy, "[o]nce [Plaintiff] was seen by medical staff" on December 30, 2011, "the failure of security staff (including Hardy * * *) to

6

'intervene' and overrule medical staff is not deliberate indifference as a matter of law." [75] at 6 (citing *Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006); *Greeno v. Daly*, 414 F.3d 645, 656 (7th Cir. 2005); *Hayes v. Snyder*, 546 F.3d 518 (7th Cir. 2008)). Since Defendant was treated on December 30, 2011, Hardy continues, the two-year statute of limitations expired at the latest on December 30, 2013 and Defendant's original complaint was untimely filed on April 11, 2014.

The Court cannot conclude, based on the face of the amended complaint, that Plaintiff's claim against Hardy accrued on December 30, 2011, and therefore is barred by the two-year statute of limitations. "Deliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition," and typically "ends only when treatment is provided or the inmate is released." *Jervis v. Mitcheff*, 258 F. App'x 3, *5-6 (7th Cir. 2007). The violation is considered to be a continuing one because "it would be unreasonable to require or even permit [a prisoner] to sue separately over every incident of the defendant's unlawful conduct." *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013) (quoting *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001)) (internal quotation marks omitted). For continuing violations, "the two-year period starts to run (that is, the cause of action accrues) from the date of the last incidence of that violation, not the first." *Id.* This allows a plaintiff to "'reach back' to the beginning of the wrong, 'even if that beginning lies outside the statutory limitations period.'" *Watkins v. Ghosh*, 2011 WL 5981006, at *3 (N.D. Ill. Nov. 28, 2011) (quoting *Heard*, 253 F.3d at 319).

Under Seventh Circuit precedent, "a supervising prison official" like Hardy "cannot incur § 1983 liability unless that officer is shown to be personally responsible for a deprivation of a constitutional right." *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996). An "'official satisfies

7

the personal responsibility requirement * * * if the conduct causing the constitutional deprivation occurs with [his] knowledge and consent.'" *Id.* at 993 (quoting *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995)). Although "non-medical personnel not directly involved in an inmate's medical care are usually not liable for their review and/or denial of medical grievances," *Dobbey v. Randle*, 2015 WL 5245003, at *9 (N.D. Ill. Aug. 26, 2015) (citing *Gevas v. Mitchell*, 492 Fed. Appx. 654, 660 (7th Cir.2012)), "[a]n inmate's correspondence to a prison administrator may * * * establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation," *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015) (citing *Vance*, 97 F.3d at 993). See also *Vance*, 97 F.3d at 993 (holding that an "inmate's letters to prison administrators may establish a basis for § 1983 liability" if the communication's "content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety'" (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994))). In addition, even if they refer an inmate's complaints to medical staff, "nonmedical officials can 'be chargeable with * * * deliberate indifference' where they have 'a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.'" *Arnett v. Webster*, 658 F.3d 742, 755-56 (7th Cir. 2011) (quoting *Hayes*, 546 F.3d at 525). The rationale is that "[t]here can be no reasonable reliance on the judgment of a medical staff where it is obvious that the staff is failing to exercise its medical judgment." *Martinez v. Garcia*, 2012 WL 266352, at *5 (N.D. Ill. Jan. 30, 2012) (finding that warden's "failure to take action despite receiving both a letter and an in-person communication" in which the plaintiff "informed him of the medical staff's refusal to treat him, coupled with [the prison doctor's] unresponsive memos, suffices to defeat" the warden's motion for summary judgment). The operative "question is whether the non-medical defendants had any

duty to do more than they did, in light of their knowledge of the situation." *Hayes*, 546 F.3d at 527.

Hardy cites three Seventh Circuit opinions—*Johnson*, *Greeno*, and *Hayes*—for the proposition that once an inmate is allowed to see medical staff, "the failure of security staff (including Hardy * * *) to 'intervene' and overrule medical staff is not deliberate indifference as a matter of law." [75] at 6. In each of those cases, however, the Seventh Circuit was reviewing summary judgment rulings, not rulings on motions to dismiss. In each case, the plaintiff's evidence was found to be insufficient to convince a reasonable trier of fact that a non-medical prison employee acted with deliberate indifferent to the plaintiff's medical needs. See *Johnson*, 433 F.3d at 1011 (warden was entitled to summary judgment on the issue of whether he acted with deliberate indifference to Johnson's medical needs, where the warden "was aware of Johnson's complaints of pain and made sure that medical care was available to Johnson so that qualified medical professionals could determine if Johnson did indeed need surgery" and "reasonably relied on the expertise of the medical professionals"); *Greeno*, 414 F.3d at 657 (inmate complaint examiner was entitled to summary judgment on the issue of whether he acted with deliberate indifference to Greeno's medical needs, where "the record reveals that he responded to Greeno's complaints by speaking to the appropriate members of the Health Services Unit, who assured him that Greeno's concerns were being addressed," his "investigation prompted a multi-disciplinary meeting with the various departments involved in Greeno's treatment," and he "investigated Greeno's complaints and relied on the assurances of the medical staff that Greeno was receiving treatment"; department of corrections secretary was also entitled to summary judgment on the same issue where "[n]othing in the record" indicated that he "shirked his duty in any way or failed to appropriately handle Greeno's claims"); *Hayes*, 546

F.3d at 527-28 (non-medical defendants were entitled to summary judgment on the issue of whether they acted with deliberate indifference to Hayes' medical needs, because "the non-medical defendants were entitled to rely on the professional judgment of medical prison officials" and nothing in the prison doctor's "reports made it obvious that Hayes might not be receiving adequate care"). These cases do not foreclose the possibility that a nonmedical prison employee can be found to be deliberately indifferent if the facts show that the employee knew or had reason to believe that the prison doctors were mistreating or not treating an inmate and failed to take appropriate action. See *Arnett*, 658 F.3d at 755-56.

In this case, Plaintiff has not "[pled] too much and admit[ted] definitively" that his claim against Hardy accrued on December 30, 2011, when Plaintiff was allowed to see Dr. Carter. *Barry Aviation*, 377 F.3d at 688. Read in the light most favorable to Plaintiff, the pleadings support a theory that the prison doctors at Stateville were mistreating or not treating Plaintiff for the entire period when he was in Stateville custody and that Hardy knew about the mistreatment or non-treatment and failed to take appropriate action. Although Plaintiff alleges that he saw Dr. Carter on December 30, 2011 and was given laxatives, he also alleges that Dr. Carter failed to address his extreme abdominal pain, bleeding from his rectum, or back pain and that this failure to provide necessary medical treatment continued until Plaintiff left Stateville in the summer of 2012. [11] at 8. Specifically, Plaintiff alleges that he saw Dr. Carter again on January 13, 2012 and told him that he was still experiencing pain, but Dr. Carter told him that he "might have to live with the pain for the rest of [his] life." *Id.* When Plaintiff saw Dr. Carter once again on March 14, 2012, Dr. Carter allegedly told Plaintiff that "I cannot help you," "nothing is wrong with you," and "[y]ou need to leave now." *Id.* In September 2011 and March and April 2012, Plaintiff also complained to Dr. Louis Shicker that he was not receiving adequate medical care,

10

and Shicker did not address his problems. *Id.* at 8-9. And in July 2012, shortly before leaving Stateville, Plaintiff complained to Nurse Williams that "for over two years he has been suffering from extreme abdominal pain, constipation, overwhelming gas in his digestive track, lower back pain, pain as he uses the restroom," and a "lump that bleeds on his rectum." *Id.* at 9. Williams allegedly told Plaintiff that "only the medical director could help him" and "did nothing." *Id.*

According to Defendants, "[t]here are no allegations in the Amended Complaint" concerning specific "actions or inactions by Defendant Hardy after the Fall of 2010," and therefore the Court must conclude that any claim against Hardy accrued at the latest when Plaintiff was allowed to see Dr. Carter on December 30, 2011. However, the pleadings do not and were not required to set out the date of every letter and grievance that Plaintiff sent to Hardy. *See* Fed. R. Civ. P. 8(a) (requiring a complaint to contain only "a short and plain statement of the claim showing that the pleader is entitled to relief"). At this "stage of the litigation," we ask only whether [Plaintiff's] complaint, liberally construed and drawing all reasonable inferences in his favor, contains facts sufficient to state a plausible Eighth Amendment claim against" Hardy. *Perez*, 792 F.3d at 782. Plaintiff alleges that, on August 11, 2010, Hardy deemed Plaintiff's August 3, 2010 grievance an emergency, yet Plaintiff did not receive medical treatment and Hardy did not follow up. [11] at 6, ¶ 28. Plaintiff alleges that he then sent Hardy at least four grievances on unspecified dates after August 3, 2010, "seeking help for the same issues" that Plaintiff raised in his August 3, 2010 grievance, but that Hardy "never indicated [that Plaintiff's] issues were emergencies again and did not address [Plaintiff's] complaints which [Hardy] previously deemed to be an emergency." *Id.* Plaintiff also alleges that he sent "numerous letters" to Hardy on unspecified dates after August 2010 "regarding his medica[l] condition and need for help for the severe pain," but that "Hardy did not respond." *Id.*, ¶ 29. These allegations

11

do not foreclose the possibility that Hardy received at least some grievances or letters after December 30, 2011—putting him on notice of an excessive risk to Plaintiff's health—but turned a blind eye. Because the pleadings do not establish that Plaintiff's claims against Hardy are "indisputably time-barred," dismissal under Rule 12(b)(6) would not be appropriate. *Small*, 398 F.3d at 898. See *Riley-El v. Godinez*, 2015 WL 4572322, at *6 (N.D. Ill. July 27, 2015) (denying wardens' motion to dismiss plaintiff's Section 1983 claim, which alleged that the wardens "were responsible for resolving inmate grievances and that they rejected his grievances requesting an soy-free diet and medical treatment," where, "[g]ven their positions as warden and their alleged responsibility to oversee the grievance resolution process, it is reasonable to infer that they could be aware of [plaintiff's] grievances and could have investigated his complaints or intervened"; also finding that although "some of [plaintiff's] claims may be time-barred," the "statute of limitations is an affirmative defense, and the court cannot determine its applicability based on the present record").[3]

---

[3] Cf. *Perez*, 792 F.3d at 782 (finding that plaintiff alleged facts sufficient to form a basis for personal Section 1983 liability against grievance officials where the "complaint alleges that the named defendants each obtained actual knowledge of Perez's objectively serious medical condition and inadequate medical care through Perez's coherent and highly detailed grievances and other correspondences" and "alleges that each of these officials failed to exercise his or her authority to intervene on Perez's behalf to rectify the situation, suggesting they either approved of or turned a blind eye to his allegedly unconstitutional treatment"); *Dorsey v. Ghosh*, 2015 WL 3524911, at *3-4 (N.D. Ill. June 3, 2015) (allegations that warden "had actual knowledge that the Wexford Defendants were providing substandard treatment for Dorsey's various ailments" based on warden's review of Dorsey's grievances, that warden "oversaw medical staff operations," and that warden was involved with and approved decisions concerning outpatient medical treatment, were sufficient to support an inference that warden had actual knowledge of Dorsey's insufficient medical care as required to state a claim for deliberate indifference); *Hoddenback v. Chandler*, 2013 WL 5785598, at *3 (N.D. Ill. Oct. 28, 2013) (allegations that warden failed to respond to Hoddenback's emergency grievance, which stated "with specificity the [medical] conditions he was suffering from" and requested medical attention, or to Hoddenback's follow-up emergency grievance two weeks later, were sufficient to state a claim for deliberate indifference); *Liebich v. Hardy*, 2013 WL 4476132, at *6-7 (N.D. Ill. Aug. 19, 2013) (allegations that warden "confirmed the grievances in which plaintiff reported that the doctors were not responding to his medical requests" were sufficient to plead "knowledge on [warden]'s part, as well as inaction" as necessary to state a claim for deliberate indifference); *Zirko v. Ghosh*, 2012 WL 5995737, at *10-12 (N.D. Ill. Nov. 30, 2012) (allegations that warden received numerous grievances and complaints from Section 1983 plaintiff concerning lack of

The Court next considers Plaintiff's argument that his Section 1983 claim against Defendant Hardy (as well as all of the other Defendants) did not accrue until April 2014, when Plaintiff—then housed at the Menard Correctional Center—was diagnosed with IBS and given medication to control his condition and manage his pain. The most notable problem with Plaintiff's argument is that at all relevant times Defendant Hardy was an employee of the Stateville Correctional Center, which Plaintiff left in in the summer of 2012, and not an employee of the Menard Correctional Center. As noted above, where a plaintiff's Section 1983 "suit charges that the defendants inflicted cruel and unusual punishment on the plaintiff by refusing to treat his condition," the refusal generally is deemed to have "continued for as long as the defendants had the power to do something about his condition, which is to say until he left the jail." *Heard*, 253 F.3d at 318. See also *Wilson v. Groze*, 800 F. Supp. 2d 949, 955 (N.D. Ill. 2011) ("As *Heard* suggests, an Eighth Amendment violation arising out of a defendant's deliberate indifference to a prisoner's serious medical needs is a continuing violation, and thus can accrue for as long as a defendant knows about a prisoner's serious medical condition, has the power to provide treatment, and yet withholds treatment."). Here, there are no allegations in the amended complaint that Hardy had the "power to do something" about Plaintiff's medical condition once Plaintiff was transferred out of the Stateville Correctional Center. *Heard*, 253 F.3d at 318.

---

treatment for severe pain sufficient to state a claim against warden for deliberate indifference); *Phillips v. Wexford Health Sources, Inc.*, 2012 WL 1866377, at *3 (N.D. Ill. May 22, 2012) (allegations that warden received Section 1983 plaintiff's grievances concerning the Stateville Correctional Center's failure to give plaintiff medication needed to treat his AIDS were sufficient to state a claim against warden for deliberate indifference); *Nolan v. Thomas*, 2011 WL 4962866, at *6 (N.D. Ill. Oct. 19, 2011) ("Here, Plaintiff's complaint alleges that, at a minimum, Warden Thomas had several reasons to know that the non-party medical officer, Dr. Paul Harvey, was providing substandard care. * * * At the pleading stage, Plaintiff has stated enough to put these Defendants on notice as to a deliberate indifference claim.").

Assuming that Hardy knew or had reason to know that the Stateville medical staff was mistreating or not treating Plaintiff following his December 30, 2011 medical appointment, but failed to do anything about it before Plaintiff was transferred out of Stateville in the summer of 2012, then Plaintiff's cause of action against Defendant Hardy may have accrued when Plaintiff "left the [Stateville Correctional Center]." *Heard*, 253 F.3d at 318. This occurred sometime between July 11, 2012 and August 29, 2012. If this accrual date range applies, then Plaintiff timely filed his original complaint against Hardy less than two years later, on April 11, 2014. Although Hardy may prevail on his statute of limitations argument at a later stage in the case, the Court cannot conclude based on the minimal record properly before it at this stage of the case that Plaintiff's claims against Hardy are "indisputably time-barred." *Small*, 398 F.3d at 898. Therefore, the Court denies Hardy's motion to dismiss Plaintiff's claims against him on statute of limitations grounds.

### III. Motion to Sever and Dismiss Claims Regarding Alleged Deprivations Occurring at Pontiac and Menard, or Alternatively to Transfer those Claims to the Central and Southern Districts, Respectively

Defendants ask the Court to sever Plaintiff's "claims arising out of alleged constitutional deprivations which occurred at Pontiac and Menard" and to either dismiss those claims or transfer them to the Central and Southern Districts of Illinois, respectively. [75] at 7, ¶ 19. Defendants argue that this result is required by the Court's order appointing counsel for Plaintiff [6] and by the Seventh Circuit's decision in *George v. Smith*, 507 F.3d 605 (7th Cir. 2007).

The Court begins its analysis with the federal rules governing joinder. Under Rule 18(a), "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Rule 20(a)(2) allows defendants to be joined in one action if: "(A) any right to

14

relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). If defendants have been improperly joined in one action, this "is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, the court may "add or drop a party" or "sever any claim against a party." *Id.*

Based on these rules, the Court concludes that all of the parties and claims are properly joined. Rule 18(a) "allows all of plaintiff's claims against Wexford to be brought in one case," regardless of whether Wexford's alleged constitutional deprivations at the three correctional centers each constituted its own, separate transaction or occurrence. *Phillips*, 2012 WL 1866377, at *1. See *also* Fed. R. Civ. P. 18(a) ("A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party."). The other defendants are properly joined pursuant to Rule 20(a)(2). Fed. R. Civ. P. 20(a)(2) (allowing defendants to be joined in one action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action"). Plaintiff's Count I against the Pontiac Defendants arises from the same "series of * * * occurrences" as Plaintiff's Count II against Wexford—namely, the deliberate indifference of medical and non-medical employees at the Pontiac Correctional Center to Plaintiff's repeated attempts to obtain a diagnosis and effective treatment for his severe gastrointestinal pain. *Id.* Likewise, Plaintiff's Count I against the Menard Defendants arise from the same "series of * * * occurrences" as Plaintiff's Count II against the Wexford Defendants. *Id.*; see also *Phillips*, 2012 WL 1866377, at

15

*1 (denying Warden Hardy's motion to dismiss on the grounds of improper joinder). In addition, issues of fact and law common to all Defendants are also likely to arise in this action. See Fed. R. Civ. P. 20(a)(2). For example, Plaintiff explains that "[m]any of the same medical records, grievances and witnesses will be involved in Mr. Ruiz's claims against all defendants," such that "[s]evering the case would result in the same or similar trials in three courts." [78] at 8. Although some of the Defendants are limited to working at a particular Illinois Correctional Center, other Defendants have responsibilities covering all three of the Correctional Centers at issue here. Defendant Wexford provides medical care and treatment to inmates in all three centers and "promulgates rules, regulations, policies, and procedures for the medical screening, medical treatment, and overall medical care of inmates" at all three centers. See [11] at 3, ¶ 14. Defendant Shicker is Agency Medical Director for the Illinois Department of Corrections, not just for one particular Correctional Center. See [11] at 3, ¶¶ 13, 14. Once the non-Wexford Defendants were properly joined under Rule 20(a)(2), Plaintiff's claims against the same Defendants for violation of his First Amendment rights (Count III) were properly joined pursuant to Rule 18(a). See *Phillips*, 2012 WL 1866377, at *1.

However, that is not the end of the matter. As Defendants point out, this Court ordered Plaintiff to submit an amended complaint to address an apparent misjoinder of claims and Defendants. The order provided that "Plaintiff may sue only Stateville officials under this case number," and "must file a separate action in the U.S. District Court for the Central District of Illinois if he wishes to pursue his claims regarding the medical treatment he received at Pontiac," and "must file suit in the Southern District of Illinois if he wishes to sue over the treatment he received at the Menard Correctional Center." [6] at 2. The Court's decision was based on *George v. Smith*, in which the Seventh Circuit held that the district court should not have allowed

a Section 1983 plaintiff to "join 24 defendants, and approximately 50 distinct claims, in a single suit." 507 F.3d at 607. The plaintiff's "sprawling complaint" in *George* "charge[d] some defendants with failing to provide adequate medical care, others with censoring his mail, yet others with mishandling his applications for parole, and so on." *Id.* at 606.

When they filed Plaintiff's amended complaint, Plaintiff's newly appointed counsel did not follow the Court's direction to sue only Stateville officials under this case number. However, they explain in Plaintiff's opposition brief that, "[t]o the extent that Plaintiff's original *pro se* complaint was confusing or appeared to contain unrelated parties and claims, the Amended Complaint remedies any and all deficiencies and clearly alleges that *all* Defendants were indifferent to [Plaintiff's] same gastrointestinal problem for four years." [78] at 6. The Court finds that Plaintiff's decision not to file three separate actions does not require dismissal or severance of the claims against Pontiac and Menard officials. Although severance is appropriate where this is no "common thread" tying together the Plaintiff's allegations against "several distinct groups of defendants at three [correctional] institutions," *Merritte v. Rolla*, 2015 WL 5062773, at *3 (S.D. Ill. Aug. 26, 2015), severance is not mandatory simply because a complaint names officials from more than one prison as defendants. In this case, it appears from the face of the amended complaint that Plaintiff's claims against all of the Defendants share a common thread: Plaintiff's February 2010 "gastric eruption" and his attempts to obtain a medical diagnosis and treatment for his IBS.

The amended complaint makes apparent that this is not a case, like *George*, where the plaintiff has joined "Claim A against Defendant 1" with "unrelated Claim B against Defendant 2." 507 F.3d at 607. Nor is this a case like *Harris v. Dart*, 2010 WL 5158134 (N.D. Ill. Dec. 14, 2010), which is cited by Defendants. See [75] at 7. In *Harris*, the court ordered a Section 1983

plaintiff to "chose a single, core claim to pursue under this case number" after the Plaintiff attempted to join six unrelated claims regarding his treatment in the Cook County Jail, including "(1) issuance of a dirty and soiled uniform and mattress resulting in a rash; (2) placement on a top bunk resulting in his injury while trying to get down from the bunk; (3) being a victim of correctional officer facilitated assaults carried out by other detainees because plaintiff was charged in a sex case; (4) improper searches of his cell resulting in improper destruction of his legal papers and personal items; (5) failure to properly fund and staff the jail; and (6) failure to provide appropriate medical care." *Harris*, 2010 WL 5158134 at *1. In this case, by contrast, all of Plaintiff's claims are based on Defendants' alleged failure to provide appropriate medical care to diagnose and treat his IBS following the February 2010 gastric rupture.

## IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss [75] is denied. The Court orders Defendant Whitfield to file an answer or motion to dismiss by December 14, 2015. The Clerk of the Court is directed to modify Defendant Randy Ptist's name to "Randy Pfister." The case is set for further status hearing on December 22, 2015 at 9:30 a.m. The Court requests that counsel file an updated joint status report, including a proposed discovery plan, no later than December 17, 2015.

Dated: November 17, 2015

Robert M. Dow, Jr.
United States District Court Judge